MARTIN et al. v. FRETWELL et al.

No. 33058. Sept. 20, 1949.

Rehearing Denied Nov. 15, 1949.

*211 P. 2d 529.*

Bruce & Rowan, of Oklahoma City, for plaintiffs in error.

Deupree & Linn, of Oklahoma City, for defendants in error.

O'NEAL, J. This is an appeal from a decree canceling and setting aside a deed conveying lots 35 and 36 in block 14, Oak Park Addition to Oklahoma City, Oklahoma, to Roberta Martin and Harlman Thomas Martin, person of African descent, in violation of a restriction agreement wherein the signers thereof agreed that no one of them, their heirs, executors, administrators or assigns would ever, for a period of 99 years, sell, lease or give away any real property in said block, or any interest therein, to any person or persons of the Negro or African race, or to any corporation where the majority of stockholders were of Negro blood.

It appears that during the early part of the year of 1926, the owners of all the lots in said block 14, except lots 35 and 36, signed and acknowledged the restriction agreement, and about August 11, 1926, said agreement was placed of record in the office of the county clerk. April 12, 1928, J. W. Guckian and Elsie E. Guckian, owners of said lots 35 and 36, signed and acknowledged an instrument in writing, referred to in the record as a "supplemental statement," as follows:

"J. W. Guckian, et al.
to
"The Public.

"Whereas a majority of the real estate owners of Block 14, Oak Park Addition to Oklahoma City, Oklahoma have entered into a written contract mutually agreeing not to sell, lease, or give away any real estate in said block or any interest therein to any person or persons of the Negro or African race, or to any corporation the majority of whose stockholders are of Negro blood; said contract further providing that any lease, conveyance or contract made in violation of this agreement shall be null and void; that said contract constitutes a mutual covenant running with the land for a period of ninety-nine years from the date of filing for record with the county clerk of Oklahoma County, Oklahoma which contract has been recorded in Book 46 page 129 of the Miscellaneous record of said county; and

"Whereas said recorded contract provides that any real estate owner in said block not a party to said recorded contract may become a party thereto subsequently;

"Now Therefore, we, the undersigned owners of Lots 35 and 36 in Block 14, Oak Park Addition to Oklahoma City, do by these presence bind ourselves, our heirs, executors, administrators and assigns to perform all of the conditions and do assume all the obligations of said contract recorded in Book and Page above stated. It being expressly understood that the same effect shall be given to that agreement as though we, the undersigned, were original signers thereto. And it being further understood that the additional benefits accruing to each and all of the original signers of said contract and to ourselves by the execution and filing of this agreement shall constitute the consideration supporting this agreement. The time within which any or all

of the original signers of said recorded contract may accept or ratify this agreement shall run concurrently with the life of said recorded contract and any overt act, or written or verbal declaration of the filing of a suit against ourselves to enforce this agreement by any or all the signers of said recorded contract shall constitute an acceptance and ratification of this agreement, and such acceptance or ratification shall then date back and become effective as to all parties from the date of filing of this agreement without notice."

That instrument was filed for record April 14, 1928. On February 3, 1928, about two months before the execution of the supplemental statement, J. W. Guckian and Elsie E. Guckian executed to the Local Building & Loan Association a mortgage covering said lots 35 and '36 to secure an indebtedness in the sum of $2,750, and on February 4, 1928, they executed a second mortgage covering the two lots to Crane Company, to secure an indebtedness in the sum of $1,500. In 1931 the mortgage of the Local Building & Loan Association and the second mortgage to Crane Company were foreclosed and said lots 35 and 36 were sold in said foreclosure proceedings to said Local Building & Loan Association. Thereafter, the Local Federal Building & Loan Association (successor to Local Building & Loan Association) contracted to convey said lots to one E. F. Heinlein. On or about August 19, 1944, Heinlein by quitclaim deed conveyed said lots to O. S. Maiden. Later, about October 14, 1944, the Local Federal executed a warranty deed conveying said lots to O. S. Maiden. December 14, 1944, O. S. Maiden conveyed the lots to Roberta Martin and Harlman Thomas Martin. Thereafter, Elsea Trust Estate, an Express Trust, and its trustees, commenced this action in the district court of Oklahoma county against the First Mortgage Loan Company and F. R. Rule, receiver, and about 35 individuals, including plaintiffs in error, Roberta Martin and Harlman Thomas Martin, asserting the invalidity of said restriction agreement and seeking the cancellation thereof.

Some of the defendants, including the Local Federal Savings & Loan Association of Oklahoma City, filed disclaimers. On motion of defendants, Ida May Fretwell et al., O. S. Maiden and other individuals were made party defendants. After motion to make more definite and certain and demurrer, defendants Ida May Fretwell, J. Calvin McKinney, Isla McKinney, Nellie B. Patton, James S. Vance, Ethel Lee Vance, Dee O. Harkey, Lucy Eugene Harkey, Mrs. H. L. Wells, Alice Potter, Bertha E. Duke, Robert W. Johnston, Bertha Duke Johnston, Norton Mayhall, Stella Mayhall, Iris M. Baughman, Lela T. Johnson, Lucille M. Johnston, Mary J. Holland, Rose Milch Walters, Ray A. Parrish, and Letha Mae Parrish filed their answer and cross-petition asserting the validity of the restriction agreement and praying for the cancellation of the deed from Maiden to the Martins and for an attorney's fee in the sum of $500.

Defendant O. S. Maiden filed an answer in the nature of a general denial.

Defendants Roberta Martin and Harlman Thomas Martin filed their separate answer to the answer and cross-petition of Ida May Fretwell et al., in which they alleged the invalidity of said restriction agreement and asserted that they were the owners of said lots 35 and 36, free and clear of any restrictions. Defendants Ida May Fretwell, et al., filed their reply to the answer and cross-petition of the Martins.

Thus, issues were joined whereby plaintiff Elsea Trust Estate was asserting the invalidity of the restriction contract and seeking cancellation thereof and defendants Ida May Fretwell et al. were asserting the validity of said restriction contract and seeking its enforcement, especially as against defendants O. S. Maiden and Roberta and Harlman Thomas Martin, and defendants Roberta Martin and Harlman Thomas Martin, were asserting the invalidity of the contract.

The case was called for trial and before trial was commenced, plaintiff

Elsea Trust Estate asked and was granted leave to dismiss its petition. Thereupon, the issues as between defendants Ida May Fretwell et al. and defendants Roberta Martin and Harlman Thomas Martin were tried to the court without a jury.

Defendant O. S. Maiden appeared by his attorney but did not present any evidence.

Decree was in favor of defendants Ida May Fretwell et al. The trial court found and held the restrictive contract, including the supplemental statement, to be valid and binding and that the deed from O. S. Maiden to Roberta and Harlman Thomas Martin was void and canceled the same and placed the title thereto back in defendant O. S. Maiden and also rendered judgment in favor of defendants Ida May Fretwell et al. against defendants O. S. Maiden and the Martins for $500 attorney's fee and made the same a lien against said lots 35 and 36 subject to a prior mortgage.

The court further found that defendants Roberta and Harlman Thomas Martin had paid defendant Maiden the sum of $1,640.19 on the purchase price of said lots and rendered judgment therefor against O. S. Maiden in favor of the Martins and also made that judgment a lien against said lots subject to a prior mortgage and the $500 attorney's fee. From that judgment and decree, defendants Roberta Martin and Harlman Thomas Martin appeal. After appeal was perfected, defendant in error Ida May Fretwell died, and on July 12, 1949, the case was revived as to her in the name of Edward B. Fretwell, executor.

Defendants in error filed a motion to dismiss the appeal upon the ground that no copy of the case-made was served upon the . necessary opposite party and in particular defendant O. S. Maiden. Motion to dismiss was presented and overruled, but defendants in error re-present the motion and insist that the appeal should be dismissed.

12 O.S. 1941 §958 provides that the case-made, or a copy thereof, shall be served upon the opposite party. It is well settled' that the term "opposite party" is synonymous with "adverse party" and means all parties who have an interest in upholding the judgment or the order sought to be reversed. Pickering v. Taylor et al., 180 Okla. 96, 67 P. 2d 949. Therein it is held:

The term "opposite party," in 12 O.S. 1941 §958, providing for service of case-made upon the opposite party or his attorney, is synonymous with "adverse party," and means all parties who have an interest in upholding the judgment or order sought to be reversed.

In Johnson et al. v. Bearden Plumbing & Heating Co. et al., 180 Okla. 586, 71 P. 2d 715, it is held:

"A case-made is required to be served upon those only who are interested in the appeal, and whose interests would be adversely affected by a reversal."

In the case at bar, O. S. Maiden could not possibly have any interest in upholding the judgment rendered below. The judgment was against him for $500 attorney's fee and a further judgment in favor of the Martins for $1,640.19. It would clearly be to defendant Maiden's interest to have the judgment reversed. Certainly it could not be to his interest to have it affirmed, although he did not see fit to appeal.

Under the record it was unnecessary to serve the case-made or a copy thereof upon defendant Maiden. We adhere to our former order denying the motion to dismiss the appeal.

The assignments of error are presented under three propositions, the first being that the two instruments purporting to prohibit the conveyance of any lots in block 14 to any person or persons of the African or Negro race do not constitute a binding and enforceable contract as to the two lots involved in this action. The contention is that the original agreement which was signed by the owners of all the lots in

block 14, except lots 35 and 36, was not signed by J. W. Guckian and his wife before it was placed of record in 1926, and that the second instrument affecting lots 35 and 36 was not executed and filed of record until 1928, and that the same was of no binding effect as between the Guckians and any of the signers of the original agreement. The last paragraph of the original agreement provides:

"This contract shall take effect and be in full force when executed by the owners of nine-tenths of the lots in said blocks and may then be placed of record; and shall continue in force for a period of ninety-nine years from the date of said filing; and any and all other lots in said blocks may be brought under this agreement subsequently, the execution thereof by the owners of such lots, bringing them under all the obligations and entitleing (sic) them to all the privileges of the first signers thereto."

The instrument executed by J. W. Guckian and Elsie E. Guckian, after reciting the original agreement and its principal provisions, provides:

"Whereas said recorded contract provides that any real estate owner in said block not a party to said recorded contract may become a party thereto subsequently;

"Now Therefore, we, the undersigned owners of Lots 35 and 36 in Block 14, Oak Park Addition to Oklahoma City, do by these presence bind ourselves, our heirs, executors, administrators and assigns to perform all of the conditions and do assume all the obligations of said contract recorded in Book and Page above stated. It being expressly understood that the same effect shall be given to that agreement as though we, the undersigned, were original signers thereto. And it being further understood that the additional benefits accruing to each and all of the original signers of said contract and to ourselves by the execution and filing of this agreement shall constitute the consideration supporting this agreement. The time within which any or all of the original signers of said recorded contract may accept or ratify this agreement shall run concurrently with the life of said recorded contract and any overt act, or written or verbal declaration of the filing of a suit against ourselves to enforce this agreement by any or all the signers of said recorded contract shall constitute an acceptance and ratification of this agreement, and such acceptance or ratification shall then date back and become effective as to all parties from the date of filing of this agreement without notice."

The provision in the original agreement that "any and all other lots in said blocks may be brought under this agreement subsequently, the execution thereof by the owners of such lots, bringing them under all the obligations and entitleing (sic) them to all the privileges of the first signers hereto," was an offer to the owner or owners of any lot or lots in the block not included in the original agreement to permit them to become parties to the original agreement at anytime within the period covered thereby.

In Rock v. Fisher, 115 Okla. 53, 241 P. 496, it is held:

"All express executory contracts resolve themselves, upon analysis, into an offer by one of the parties, and an acceptance of that offer by the other. The act of acceptance closes the contract, and ordinarily nothing further is required to make the obligation effective."

A general offer made to a particular class of persons may be accepted by anyone coming within the description of the class and as soon as there is an acceptance by a person within the offer there is a binding contract. 13 C.J. 273.

Under the above rule, there was an offer and acceptance so as to make the agreement as binding upon J. W. Guckian and Elsie E. Guckian as it was upon any of the original signers, subject, of course, to the intervening rights of third persons which we notice under the second proposition.

Under the second proposition it is the contention of plaintiffs in error that

some two months before J. W. Guckian and Elsie E. Guckian, owners of the two lots here involved, accepted the offer of the signers of the original agreement and became parties thereto, they executed and delivered a first mortgage on the two lots to the Local Federal Building & Loan Association to secure an indebtedness of $2,750, and also executed a second mortgage to Crane Company to secure a mortgage of $1,500, and at that time the lots were entirely free from any restrictions. They contend that the mortgages were subsequently foreclosed and that the lots were sold to the Local Federal Building & Loan Association free from such restrictions and that the Local Federal Building & Loan Association had the right to and did convey the lots to O. S. Maiden free from any restrictions and that Maiden had the right to and did convey said lots to plaintiff in error free from any restriction.

The rule appears to be that the purchaser at a valid foreclosure sale under a power in a mortgage or deed of trust acquires, subject to the express reservations or conditions made on the sale, all the title originally conveyed by the mortgage or deed, divested of the equity of redemption, together with all appurtenances, easements, and incidental rights, and the right to take appropriate steps to perfect his title or free it from clouds. Furthermore, the rights of the purchaser will not be affected by any act of the mortgagor after the execution of the mortgage. 41 C.J. 996.

In Magnolia Petroleum Co. v. Drauver et al., 183 Okla. 579, 83 P. 2d 840, it is said:

"We agree that a prior mortgagee, in the absence of estoppel, would not be bound by subsequent restrictions placed upon the property;"

The mortgagors J. W. Guckian and Elsie E. Guckian could not, after the execution of said mortgages, effectively restrict the sale of the property as against the mortgagee without the consent of the mortgagee. When the Local Federal Building & Loan Association became the purchaser under the foreclosure proceeding, it acquired title free from the restrictions asserted by the defendants in error. The Local Federal Building & Loan Association conveyed to Maiden free from such restrictions and Maiden conveyed to the Martins free from such restrictions.

What we have said under the second proposition renders it unnecessary to consider the other questions presented.

Judgment reversed and the cause remanded, with directions to enter judgment in favor of defendants Martin in accordance with the views herein expressed.

No. 33422. Oct. 18, 1949.
Rehearing Denied Nov. 15, 1949.